E-filed 2/16/2017

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMANDA BARNES,

          Plaintiff,

    v.

MARRIOTT HOTEL SERVICES, INC.,

          Defendant.

Case No.15-cv-01409-HRL

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ADA CLAIM, AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS**

Re: Dkt. Nos. 30, 34

      Plaintiff Amanda Barnes ("Barnes") and defendant Marriott Hotel Services, Inc. ("Marriott"), the operator of the San Jose Marriott ("the Hotel"), have filed cross-motions for summary judgment. Dkt. Nos. 30, 34. Barnes asserts that she is entitled to summary judgment on her claims for injunctive relief under the Americans with Disabilities Act ("ADA") and for damages under the Unruh Civil Rights Act because the defendant's reservation system does not comply with ADA regulations at 28 C.F.R. Section 36.302(e). Dkt. No. 34. She seeks to reserve the issue of damages for trial. *Id.* Defendant, in turn, argues that it is entitled to summary judgment on Barnes's ADA claim because she lacks standing to assert a claim for injunctive relief and she has not established a violation of any accessibility standards. Dkt. No. 34. Defendant also argues that it is entitled to summary judgment on Barnes's state law claims, as these claims require Barnes to establish a violation of the ADA, which, defendant asserts, she has not done. *Id.* For the reasons described below, the court denies Barnes's motion for summary judgment, grants summary judgment in favor of Marriott on the ADA claim, and declines to exercise supplemental jurisdiction over the state law claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

# BACKGROUND[1]

In 2011, plaintiff Amanda Barnes was the victim of a pedestrian hit-and-run accident. Barnes Dep., 12:20-23.  She suffered an injury to her spinal cord, and, as a result, she is a paraplegic with no movement or feeling in her legs.  *Id.*, at 12:4-18; Dkt. No. 34, Barnes Decl. (I), ¶ 2.[2]  She now uses a wheelchair for mobility.  Barnes Decl. (I), ¶ 2.  For the last several years, Barnes has resided in and around Sacramento, including, most recently, in Auburn, California. Barnes Dep., 8:1-11, 8:23-9:4, 9:20-24, 10:2-6.

In October 2013, Barnes registered for the Abilities Expo, "an event for people with disabilities" featuring "new products," "workshops[,] and seminars."  *Id.*, at 22:15-23:1.  The Abilities Expo was being held the next month in San Jose, in the Convention Center.  Barnes Decl. (I), ¶¶ 3-4.  Shortly after registering for the Expo, Barnes made a reservation at the San Jose Marriott Hotel for the dates of the event.  Barnes Dep., 22:21-23:1.  She selected the Hotel because of its convenience, as the Hotel is connected to the Abilities Expo site.  *Id.* at 23:7-23; Barnes Decl. (I), ¶ 5.

Barnes began searching for a reservation on the Marriott's website.  *Id.* at 23:24-24:6.  She attempted to reserve an "accessible room with a roll-in shower," *id.* at 24:10-11, but states that the online reservation system said that the room was "[n]ot guaranteed," *id.* at 24:21-24.  Despite receiving this notice, Barnes continued making a reservation, selecting an option to request an accessible room.  *Id.* at 25:4-12.  Her reservation completed, she received a confirmation e-mail indicating that the requested accessible room with a roll-in shower was not guaranteed.  Barnes

---

[1] Before discussing the facts of this case, the court notes that Marriott has objected to Barnes's submission of a separate statement of uncontroverted facts.  Such statements are not allowed under Civil Local Rule 56-2 unless required by the assigned judge.  As the statement of uncontroverted facts and conclusions of law combined with Barnes's memorandum of points and authorities still falls under the 25-page limit for motions set by the Local Rules, the court declines to strike the separate statement.  *See Cavender v. Sutter Lakeside Hosp.*, No. C-04-3110 MMC, 2005 WL 2171714, at *1 n.1 (N.D. Cal. Sep. 6, 2005) (exercising discretion to consider separate statement of uncontroverted facts); *Debro v. San Leandro Unified Sch. Dist.*, No. C-99-0676 VRW, 2001 WL 1329605, at *5 (N.D. Cal. Oct. 11, 2001) (same).  The court will not, however, consider the facts contained in the separate statement to be uncontroverted simply by nature of their inclusion therein.

[2] The court refers to Barnes's declaration in support of her motion for summary judgment, Dkt. No. 34, as "Barnes Declaration (I)," and to Barnes's declaration in support of her opposition to defendant's motion, Dkt. No. 38, as "Barnes Declaration (II)."

1   Decl. (I), ¶ 7.  Concerned about whether she would have an accessible room, Barnes called

2   Marriott and spoke to a male representing himself as a staff member at the Hotel in San Jose.  *Id.*;

3   Barnes Dep., 32:21-33:10.  Barnes states that, "I told him that I reserved a room, and he said that .

4   . . the accessible room was not guaranteed.  And I told him that I needed to make sure that I was

5   going to have an accessible room; otherwise, I can cancel my reservation and try to find another

6   hotel that can accommodate me."  *Id.* at 32:21-33:10; Barnes Decl. (I), ¶ 7.  She testifies that the

7   man responded by assuring her "that [she] would have an accessible room.  . . . He said that even

8   if I didn't have the specific room with a roll-in shower, that they could, quote/unquote, put in a

9   temporary roll-in shower, which didn't make sense to me at all.  And I even questioned him on it,

10   but then he kept assuring me."  *Id.* at 32:21-33:10; Barnes Decl. (I), ¶ 8.  "Satisfied with the

11   Marriott's assurances," Barnes "kept [her] reservation and did not look for another hotel."  Barnes

12   Decl. (I), ¶ 10.

13       Barnes received a confirmation e-mail (mentioned above) shortly after completing her

14   online reservation and a reminder e-mail on the day of her arrival.  Barnes Decl. (I), ¶¶ 6-7, 11,

15   Exs. 3, 5.  Both e-mails stated that her reservation was for a "Guest room, 1 King or 2 Double,"

16   and that she had made special requests for a "Mobility Accessible Room with Roll-in Shower," as

17   well as for 1 King Bed, both of which were noted to be "Sold Out/Not Guaranteed."  Barnes Decl.

18   (I), Exs. 3, 5.

19       On November 22, 2013, at around 9:00 PM, Barnes Dep., 43:13-16, Barnes arrived at the

20   Hotel to check in to her room, *id.*, at 42:21-48:22.  Hotel staff informed her that no accessible

21   rooms were available.  *Id.*, at 44:3-4; Barnes Decl. (I), ¶ 12.  Barnes testified that, initially, the

22   hotel staff "were trying to send me away, and they were basically telling me to try and find

23   another hotel that could accommodate me for the weekend," but that they also called hotels in the

24   area to determine if they had accessible rooms.  Barnes Dep., 46:9-116.  After several hours,

25   Barnes cut off the staff's efforts and decided to take the standard room, asking the Hotel to provide

26   a transfer bench for the tub/shower.  *Id.*, 46:8-16, 48:9-17.  She was unable to use the transfer

27   bench she received, however, as it was not the type that she needed.  *Id.* at 49:8-25.

28       Barnes filed her complaint in this lawsuit in March 2015.  Dkt. No. 1.  She alleges claims

United States District Court
Northern District of California

1    for injunctive relief under the ADA, actual and statutory damages under the Unruh Civil Rights

2    Act, actual and statutory damages under the Disabled Persons Act,[3] and damages for negligence

3    per se.  *Id.*  She also seeks reasonable attorney fees and costs.  *Id.*

4         The San Jose Marriott was constructed in 2003, and it was designed to comply with the

5    ADA standards in effect at that time.  Dkt. No. 40, Southwell Decl. (II), ¶ 2.[4]  The Hotel contains

6    510 guest rooms, 15 of which are mobility accessible, and six of which have roll-in showers.  Dkt.

7    No. 32, Southwell Decl. (I), ¶ 2.  Marriott's online reservation system contains a description of the

8    Hotel's accessible features, including the features of the guest rooms.  Southwell Decl. (II), ¶ 3.

9    For the weekend of Barnes's stay, the Hotel "had [previously] committed . . . all of [its] accessible

10   room[s]—[the] entire accessible inventory" to the Abilities Expo.  Southwell Dep., 43:14-25.

11        Prospective guests at the Hotel may make reservations online, in person, or by telephone.

12   Southwell Decl. (I), ¶ 3.  For the online reservation system, the guest selects the options she wants

13   and puts down a credit card.  Southwell Dep., 17:2-18:9.  The system then informs her of whether

14   the room is available and the price, and the guest may make the reservation or not.  *Id.*  If the room

15   is not available, the system "will tell you either that it's not, or that it's not guaranteed."  *Id.*;

16   Southwell Decl. (I), ¶ 3.  For telephone reservations, the system works the same way—the guest

17   would be notified that the room is not available.  Southwell Dep., 21:22-22:4.  Marriott staff is

18   taught, however, to "feel out . . . the customer as to . . . what accommodations might satisfy their

19   particular needs."  *Id.*

20        When a guest reserves "a specific accessible room type with . . . certain attributes[,] . . .

21   that room is guaranteed."  *Id.* at 22:24-23:7.  The Hotel does not overbook these rooms, and it

22   removes them from the pool of available rooms as they are reserved.  *Id.* at 22:25-23:7; 29:2-4.

23   "The Hotel guarantees that the specific accessible room reserved is held for the reserving

24   customer."  Southwell Decl. (I), at ¶ 5.  If a guest tries to reserve a specific type of accessible

25

26   _____

[3] The complaint acknowledges that Barnes can only recover under one of the two California
27   statutes and states that she will make an election prior to trial.
[4] The court refers to the Southwell declaration attached to the defendant's motion for summary
28   judgment as Southwell Decl. (I), and to the declaration attached to the defendant's reply as
     Southwell Decl. (II).

United States District Court
Northern District of California

room when none of that type is available, he or she receives a notification at the time of booking that the room is "Sold Out/Not Guaranteed;" meaning that "it's already been reserved by someone else." Southwell Dep., 28:2-12. The guest may still select that type of room, *id.* at 30:20-23, 31:2-6, but the guest receives the "Sold Out/Not Guaranteed" notification and the selection is processed as a *request*, which the Hotel tries to accommodate (for example, if an individual who has reserved that room has canceled). *Id.*, at 29:10-20, 33:10-21. Thus, speaking of the Barnes reservation, Southwell, a general manager of the Hotel, asserts that Barnes was not able to reserve an accessible room with a roll-in shower because none were available, but that she was able to reserve a standard room and to make a request for a room with a roll-in shower. *Id.*, at 35:17-24.

In her deposition, Barnes testified that she has not returned to the San Jose Marriott since 2013 and that she has no plans to return to the Hotel. Barnes Dep., 58:15-19. Further, she stated that she has not attended any Abilities Expo events since 2013. *Id.* at 62:7-9. In her declaration in support of her summary judgment motion, however, she states that she "currently" has no plans to visit the Marriott, but that she does "want to attend the Abilities Expo in San Jose again in the future." Barnes Decl. (I), at ¶ 17. When she does, she "would like the ability to stay at the Marriott because it is conveniently located." *Id.* Barnes's declaration in support of her opposition to the defendant's summary judgment motion expands on this idea:

> Because of my experience at the hotel and because I am very upset with the poor reservation system . . . , I have no intention to patronize the [Hotel] until the reservation system is changed so that I can go on the website, see what accessible rooms are available, see what access features are found in each such room, and . . . know that I have such a room. I am certainly going to attend future Abilities Expos and would like to stay at a compliant San Jose Marriott because of its comfort and convenient location—adjacent to the convention center where the Abilities Expo is normally held.

Barnes Decl. (II), ¶¶ 15-16.

## REQUESTS FOR JUDICIAL NOTICE

Both parties have requested that the court take judicial notice of a limited number of documents. Courts may take judicial notice of facts that are "not subject to reasonable dispute" and that "can be accurately and readily determined from sources whose accuracy cannot

1  reasonably be questioned." Fed. R. Evid. 201.

2      Barnes has asked that the court take judicial notice of several pages of the Marriott website

3  describing the accessibility features of the Hotel and of specific accessible room types.  Dkt. No.

4  38.  "It is not uncommon for courts to take judicial notice of factual information found on the

5  world wide web."  *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007);

6  *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012)

7  (taking judicial notice of statistics found on a website).  As Marriott has not disputed the

8  information on its own website, and as this information is not subject to reasonable dispute, the

9  court takes judicial notice of these facts.

10      Marriott requests that the court take judicial notice of excerpts from the United States

11  Department of Justice's 2010 ADA Title III Regulations Guidance and Section-by-Section

12  Analysis, as well as of a Google Maps page showing the distance between Barnes's residence in

13  Auburn, California, to the Hotel in San Jose.  Dkt. No. 42, Exs. A, B.  As the first document is a

14  publication by a federal agency, the court finds that it is "capable of accurate and ready

15  determination by resort to sources whose accuracy cannot reasonably be questioned."  *See Corrie

16  v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (taking notice of a government

17  publication).  Additionally, courts have taken judicial notice of Google Maps for the purpose of

18  determining distances and geography.  *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th

19  Cir. 2012).  The court takes judicial notice of each of these facts, as well.

## EVIDENTIARY OBJECTIONS

21      The court next determines which evidence is properly before it.

### 1.  Marriott's Objections to Barnes Declaration (I) ¶ 8; Barnes Declaration (II) ¶ 8.

23      The Barnes Declarations I and II contain substantially the same assertions in their

24  respective eighth paragraphs (with one declaration stating that Barnes had been promised a

25  "temporary" roll-in shower, the other a "portable" roll-in shower, by a "staff member at the

26  Marriott" or "the Marriott phone operator," respectively), so the court resolves Defendant's

27  objections to these two statements together.  Defendant objects to these statements on the grounds

28  that (1) they are inadmissible hearsay and (2) that they directly contradict Barnes's prior

United States District Court
Northern District of California

deposition testimony.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  Fed. R. Evid. 801.  Here, the statement in question is the staff member's assertion to the effect of "you will have an accessible room or a temporary/portable roll-in shower."  Barnes does not offer this statement to prove that she would have a temporary roll-in shower or that the Hotel would accommodate her requests.  Instead, she offers the staff member's statement to show that it led her to believe that an accessible room (or a room that could be made accessible) would be provided to her.  As this statement is not admitted to prove the truth of the matter asserted, it is not hearsay and may be admitted (at least for the purpose described above).  *See Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay.").  Additionally, the challenged statement is admissible as a form of verbal act or a statement with legal significance (in this case, as a representation of the accessibility features of the Hotel).  As such, the statement is not offered to prove its truth, but to prove that it was said.  *See W. Coast Truck Lines, Inc. v. Arcata Cmty. Recycling Ctr., Inc.*, 846 F.2d 1239, 1246 n.5 (9th Cir. 1988) ("[S]tatements which may themselves affect the legal rights of the parties are not considered hearsay under the Federal Rules of Evidence.").

Marriott next objects that paragraph eight of Barnes's Declarations contradicts portions of her prior deposition testimony without explanation.  While Barnes says in her deposition that she was *initially* told that "the accessible room was not guaranteed," Barnes Dep., 32:21-22, she testified that the Marriott staff member later assured her "that [she] would have an accessible room" or that a "temporary roll-in shower" could be provided, *id.*, at 33:3-10.  This testimony is entirely consistent with the statements in Barnes's declarations that a Marriott staff member assured her that she would have either an accessible room or a portable/temporary roll-in shower.  This objection is not well-founded.

## 2.  Marriott's Objections to Exhibit 4 to the Barnes Declarations.

Marriott next objects that Exhibit 4 to the Barnes Declarations, "the redacted call records" purporting to show the call she made to the Hotel, is not properly authenticated and that the

underlying records are hearsay.  Federal Rule of Evidence 901 states that, to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Such evidence may come in the form of testimony of a witness with knowledge.  Fed. R. Evid. 901(b).  Though Barnes's declaration states that these records are "true and correct" copies of her phone records, she is not a person with knowledge of how the records were created.  Additionally, though phone records could fall under the business record exception to the hearsay rule, the proponent of the evidence must still prove that the records "were made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) [that] the record is kept in the course of [a] regularly conducted business activity."  Barnes has not done this.  *Alexander v. Boeing Co.*, No. C13-1369 RAJ, 2014 WL 3900574, at *5 (W.D. Wash. Aug. 11, 2004) (finding phone records inadmissible when the proponent had not authenticated them with evidence "from the source of the data"); Fed. R. Evid. 803(6).  The court sustains Marriott's objections to the phone records.

### 3.  Marriott's Objections to Barnes Declaration (I) ¶ 12.

Marriott objects that Barnes's statement, "despite the fact that I was assured an accessible room or alternative arrangements, when I arrived at the Hotel I was told that there were no accessible rooms available and that there was no way to provide a room that could be made accessible," contradicts her prior deposition testimony and is inadmissible hearsay.

Marriott's objection about contradictory testimony cites *Cleveland v. Policy Management Systems Corp.*, in which the court did not endorse but respected the holdings of lower courts that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statements . . . without explaining the contradiction or attempting to resolve the disparity."  526 U.S. 795, 806-07 (1999).  As Marriott's objections with respect to the allegedly contradictory testimony go to the issue of whether Barnes created a genuine issue of fact rather than to whether the evidence is admissible, the court will resolve it in its discussion of the issues, below.

As to the hearsay objection, the court refers to its prior explanation regarding statements with legal significance offered to prove that they were said.  This objection is overruled.

United States District Court
Northern District of California

### 4.  Marriott's Objections to Barnes Declaration (II) ¶ 16

Marriott's last objection argues that Barnes's statement that she is "certainly going to attend future Abilities Expos and would like to stay at a compliant Marriott . . ." contradicts, without explanation, her prior deposition testimony and her earlier declaration.  As this objection concerns issues of fact rather than admissibility, the court will address it below.

### DISCUSSION

### 1.  Legal Standard

The court should grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At summary judgment, the moving party bears the initial burden of producing evidence demonstrating the absence of a triable issue of material fact; or, if the nonmoving party would bear the burden of proof on an issue at trial, the moving party need only show an absence of evidence in support of a claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).  If the moving party meets this burden, the burden shifts to the non-moving party to demonstrate a genuinely disputed fact.  *Id.* at 324.  A "genuine issue" of material fact exists if the non-moving party's evidence, viewed in the light most favorable, "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In evaluating a motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  But if the moving party carries its burden, the non-moving party must produce enough admissible evidence to create a genuine issue of material fact; speculative testimony is not sufficient.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### 2.  Federal Rules of Civil Procedure, Rule 8.

As a threshold matter, Marriott argues that summary judgment should be denied because Barnes's complaint did not sufficiently allege any deficiency in the web reservation system to provide Marriott with fair notice that a noncompliant reservation system was a grounds upon which she sought relief.

Rule 8 of the Federal Rules of Civil Procedure states that a civil complaint "must contain .

. . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  The Supreme Court has expanded upon the Rule's requirements, explaining that complaints must provide "fair notice" to the defendants of what the claims are and the grounds upon which they are based.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  In the context of the ADA, the Ninth Circuit has held that, for claims of discrimination due to architectural barriers at public accommodations, "the relevant 'grounds' are the allegedly non-compliant architectural features at the facility. . . . Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011).

*Oliver* is distinguishable from the present case, however.  In *Oliver*, the plaintiff initially alleged a list of many architectural barriers and later sought leave to amend to include others.  *Id.* at 905-06.  Though the district court denied the request to amend as untimely, the plaintiff later included additional architectural barriers in an expert report.  *Id.* at 906.  The district court, at the summary judgment stage, declined to consider the barriers newly presented in the expert report because they were not properly before it.  *Id.*  The Ninth Circuit affirmed the district court's determination that the defendants did not have fair notice of the barriers in the expert report.  *Id.* at 909.  In contrast, though the plaintiff's complaint here does not cite to the specific section of the ADA regulations concerning reservation systems, it alleges facts that provide fair notice of the claims (discrimination under the ADA) and the grounds for them (the process for reserving an accessible room).  The complaint states:

> The Plaintiff reserved a room online 6 weeks before her November 2013 stay.  Concerned that she may not get an accessible room, plaintiff contacted the Hotel and made sure that the room would be ready and available in November 2013 when she visited.  Plaintiff was assured that, even if an accessible room was not available on the day of her visit, she could be accommodated with alternative arrangements.  A Hotel staffer, over the phone, assured plaintiff that an inaccessible room can be made accessible with a few changes.  What is more, a roll in shower can even be provided in an inaccessible room, plaintiff was told.  Satisfied with the Hotel's assurances, plaintiff kept her November 2013 reservation.

Dkt. No. 1, at ¶ 7.  Later paragraphs allege that plaintiff did not receive an accessible room.  *Id.* at

¶ 10.  These allegations provide fair notice of plaintiff's argument that a noncompliant reservation system—including the website, which allegedly failed to clearly communicate to her whether she had reserved an accessible room, and the telephone call with a staff member, which allegedly communicated inaccurate information—constitutes the grounds upon which she will base her claims.  Federal Rule of Civil Procedure 8 does not preclude the court from hearing Barnes's claims regarding the reservation system.

### 3.  Standing.

As part of establishing a federal court's subject matter jurisdiction, individuals must establish Article III standing to sue.  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  Standing requires the plaintiff to establish three elements: (1) an injury-in-fact that is "concrete and particularized" and "actual or imminent," (2) the injury must be "fairly . . . trace[able] to the challenged action of the defendant," and (3) it must be "likely" that a favorable decision will redress the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In the ADA context, "[o]nce an individual has encountered . . . alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts."  *Chapman*, 631 F.3d at 947 (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008).

Only injunctive relief is available under Title III of the ADA.  *Luu v. Ramparts, Inc.*, 926 F. Supp. 2d 1178, 1182 (D. Nev. 2013).  To establish standing for injunctive relief, a plaintiff must also demonstrate, in addition to the above, that there is a "real and immediate threat of future injury by the defendant."  *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  The Ninth Circuit has held that there are two ways in which an ADA plaintiff may establish standing to sue for injunctive relief: the plaintiff can either demonstrate "deterrence" or "injury-in-fact coupled with an intent to return to a noncompliant facility."  *Chapman*, 631 F.3d at 944.  Standing to sue under the ADA does not require the plaintiff to engage in "futile gestures" of "attempting to gain access" to inaccessible facilities in order to show actual injury.  *Pickern v. Holiday Quality Foods,*

United States District Court
Northern District of California

11

*Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002).  But the injury alleged by the plaintiff—whether based on an intent to return or deterrence—cannot be based only on conclusory statements unsupported by specific facts.  *Compare Luu v. Ramparts, Inc.*, 926 F. Supp. 2d 1178, 1182 (D. Nev. 2013) (plaintiff failed to establish standing where his affidavit contained "only conclusory statements" about his intent to return to a facility) *and Feezor v. Sears, Roebuck and Co.*, No. CIV S-10-0908 KJM-CMK, 2012 WL 4510950 (E.D. Cal. Sep. 30, 2012) (plaintiff failed to establish standing when he did not identify any "definitive reason why, or any time-frame for when," or "any other information or specific facts to support his affirmation of an intent to return" to the facility), *with Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002) (finding standing where plaintiff frequently visits the town in which defendant's store was located and the store was his favorite grocery chain) *and Molski v. Price*, 224 F.R.D. 479, 483 (C.D. Cal. Aug. 20, 2004) (plaintiff established standing by stating that he drives past the facility 10 to 50 times per year and that he wants to return to check on compliance).  Such speculative "some day" intentions will not support standing.  *Lujan*, 504 U.S. at 564.

Here, weighing against standing, Barnes lives over a hundred miles from the Hotel, she has not attended an Abilities Expo since her stay at defendant's facility in 2013, and she testified that she has not returned to the Hotel and has no plans to do so.  Barnes Dep., 58:15-19, 62:7-9.  In favor of standing, Barnes states that she "want[s] to attend the Abilities Expo in San Jose again" and to stay at the Hotel because of its convenient location, but that she is deterred from doing so by the reservation system's alleged failure to communicate whether accessible rooms are available.  Barnes Decl. (I), ¶ 17; Barnes Decl. (II), ¶ 15.  Barnes's statements regarding her intent to attend the Abilities Expo intensified between her first and second declarations, with the latter including a statement that "I am certainly going to attend future Abilities Expos."  Barnes Decl. (II), ¶ 16.

Marriott argues first that Barnes's latter statements in her declarations should be disregarded, as a party cannot "create a genuine issue of fact . . . simply by contradicting his or her own previous sworn statements."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999).  Marriott also points to *Feezor v. Sears, Roebuck & Co.* for the proposition that

12

1   "conclusory, self-serving affidavits, lacking detailed facts and any supporting evidence," should be

2   disregarded.  No. CIV S-10-0908 KJM-CMK, 2012 WL 4510950, at *3 (E.D. Cal. Sep. 30, 2012)

3   (quoting *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1996)).  The court

4   is not persuaded, however, that Barnes's prior deposition testimony, viewed in the light most

5   favorable (at least for the purposes of her opposition to Defendant's motion for summary

6   judgment), contradicts her later declarations.  While Barnes stated that she had no plans to return

7   to the Hotel, this statement is consistent with the later-expressed sentiment that she is deterred

8   from doing so.  As for *Feezor*, the court there noted that only "when a declaration states only

9   conclusions" and not admissible facts can it be disregarded by a court at summary judgment.  *Id.*

10  Since Barnes is able to support her intentions to return to San Jose with reference to the Abilities

11  Expo, an event at a location connected to the Hotel that she has previously attended, the court will

12  not completely disregard her declaration.

13          This is not to say, however, that Barnes establishes standing.  As Marriott suggests, she has

14  not been to an Abilities Expo since 2013.  She states no concrete plans as to when she will attend

15  one next.  She has no reservations.  She has not even submitted any evidence that the Abilities

16  Expo will continue to be held in San Jose, let alone at the San Jose Convention Center (adjacent to

17  the Hotel).  Without more, Barnes has only stated the sort of "some day" intentions that are

18  insufficient to establish standing.

19          Barnes argues that she has carried her burden under the "deterrence" method of

20  establishing standing.  Deterrence does not require the plaintiff to have an intent to return, Barnes

21  asserts; a plaintiff who is deterred can establish standing despite having "no plan whatsoever" of

22  returning to the inaccessible business.  Dkt. No. 44.  Barnes argues that a deterred plaintiff need

23  only show "some evidence that the person would *have reason to return* if the circumstances

24  changed."  Dkt. No. 44.

25          Even under Barnes's formulation, however, she would still fall short.  Barnes must support

26  the assertion that she has reason to return with evidence of more than the "some day" intentions to

27  attend the Abilities Expo at an uncertain point in the future that she has stated.  The cases in which

28  courts have found standing on deterrence theories all featured plaintiffs who were able to support

United States District Court
Northern District of California

13

their showings with such evidence.  *See, e.g.*, *Pickern*, 293 F.3d 1133 (plaintiff frequently visited the town in which the store was located); *Molski*, 224 F.R.D. at 483 (plaintiff drove past the facility 10 to 50 times per year); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040-41 (9th Cir. 2007) (plaintiff visited the store on ten to twenty prior occasions, including once after filing suit, and planned to return in association with his annual trips to a neighboring theme park); *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1112 (D. Minn. 2014) (plaintiff lived three and eleven miles from the inaccessible facilities, which were "within the 'geographic zone that Plaintiff typically travel[ed] as part of his regular activities'"); *Lema v. Courtyard Marriott Merced*, No. 1:10-cv-00131-SMS, 2013 WL 1345520, at *9 (E.D. Cal. Apr. 3, 2013) (plaintiff had regular speaking engagements near the inaccessible hotel, including one three months after plaintiff prepared her declaration).  Barnes's evidence falls short of these examples.

Barnes has not shown that she has standing to sue for injunctive relief under the ADA.  As a result, defendant is entitled to dismissal of this claim.

**4.  ADA Violations.**

Alternatively, defendant is entitled to summary judgment and plaintiff's motion for summary judgment must be denied because (a) the plaintiff fails to establish that the web component of Marriott's reservation system has violated any provisions of the ADA or its supporting regulations, and (b) though the plaintiff has shown that the telephonic component of Marriott's reservation system might have violated the ADA, her claim related to this potential violation fails because of problems related to standing in addition to those described in the previous section.

To succeed on a discrimination claim under Title III of the ADA, a plaintiff must show that "(1) [s]he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodation by the defendant because of [her] disability."  *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2011).  The third element is satisfied when the plaintiff can show a violation of accessibility standards.  *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1073 (N.D. Cal. 2014).

Barnes argues that Marriott's reservation system violates 28 C.F.R. § 36.302(e) . That section states:

> a place of lodging shall, with respect to reservations made by any means . . . (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms; (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type; (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and (v) Guarantee that the specific accessible guest room reserved through its reservation service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

28 C.F.R. § 36.302(e).

### a.   Marriott's Website.

Barnes first argues that Marriott's reservation system violates Section 36.302(e) because the website does not provide sufficient detail about accessible features to allow a wheelchair user to make an independent assessment of whether these features would meet her needs.  Plaintiff suggests that more detailed descriptions of rooms or features, including, potentially, pictures or floorplans, would be appropriate.

In response, Marriott points to a 2010 guidance document from the Department of Justice ("DOJ") entitled "Americans with Disabilities Act Title III Regulations: Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities."  Dkt. No. 41, Southwell Decl., Ex. A.[5]  The DOJ document states that "[f]or hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and

---

[5] Also available online at
https://www.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.htm#a2010guidance.

1    number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower),

2    and communications features . . . .   Based on that information, many individuals with disabilities

3    will be comfortable making reservations."

4        The Hotel, which was constructed to be compliant with the 1991 Standards, provides

5    descriptions of accessible features on its website that include the level of detail proposed by the

6    ADA Guidance document.  *See* Dkt. No. 38, Plaintiff's Request for Judicial Notice (showing

7    documents from Marriott's website stating, "[a]ccessible guest rooms have a 32 inch wide

8    opening," and listing the areas of the hotel that are accessible, as well as describing "Accessible

9    Room Features" for individual room types: "[t]his room type offers mobility accessible rooms[;]

10   [t]his room type offers accessible rooms with roll in showers[.]").  According to the DOJ guidance

11   document interpreting the ADA Accessibility Guidelines, which courts have held is "entitled to

12   substantial deference," *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1069 (9th Cir. 2015), these

13   descriptions and this level of detail is appropriate and acceptable.  The court is thus not persuaded

14   that Marriott's website violates Section 36.302(e) for any failure to identify and describe

15   accessibility features.

16       Barnes next argues that the Hotel fails to block and remove accessible guest rooms once

17   they are reserved.  She asserts that a prospective guest's ability to visit the Marriott's website and

18   select and request an accessible room that has already been booked violates the regulation's

19   requirement that accessible rooms be "removed from all reservation systems."  Further, she argues

20   that the ambiguity of the "Sold Out/Not Guaranteed" language that a guest receives when making

21   such a request for an unavailable room pushes prospective customers to call the Hotel to ask

22   whether the rooms are, in fact, sold out, or whether they are actually available (and simply not

23   guaranteed).  She asserts that this violates the 28 C.F.R. Section 36.302(e)(i) requirement for equal

24   reservation processes by creating a burden for individuals with disabilities who want to reserve an

25   accessible room that is not faced by other individuals.

26       The Hotel, however, has produced evidence stating that its reservation system blocks and

27   removes accessible rooms as they are reserved, Southwell Dep., 29:2-4 ("Q: When accessible

28   rooms are reserved, are they then removed from the pool of available rooms?  A: They are, yes."),

29:22-30:7; Southwell Decl., ¶ 5, and Barnes does not produce any evidence to suggest that it does not.[6]  Barnes instead argues that "Defendant does not deny that a request for an accessible room can still be made online, even though those rooms are sold out."  But a *request* for an accessible room is not a reservation—and individuals making such requests are informed by the website that the rooms they are requesting are "Sold Out/Not Guaranteed."  Southwell Dep., 28:14-17 (the "Sold Out/Not Guaranteed" notification appears as a prospective guest is making a reservation); Barnes Dep., 24:10-24 (stating that the words "Not guaranteed" appeared on the screen during the reservation process).  The fact that an individual can, essentially, place her name on a waiting list does not mean that the Hotel has violated the block and remove requirement for guests who successfully made reservations for available rooms.

The DOJ's guidance document (hyperlink provided above) is silent on the meaning of the phrase "removed from all reservation systems" and whether it requires the removal of booked rooms not only from the pool of available rooms but also from the set of rooms that prospective customers can view on the website (as plaintiff suggests).  But the DOJ guidance document *does* make clear that the purpose of the block and remove requirement is "to eliminate double-booking" and to ensure that the *specific* accessible room reserved by an individual with disabilities is held for that guest.  Holding a specific room with particular identified features for a guest that reserves a room with those features prevents that guest from arriving at the Hotel only to find that the particular accessible features she requires are no longer available.

Barnes did not double-book a room.  She reserved a standard room and submitted a request for a room with accessible features (and she was notified that rooms with these features were "Sold Out/Not Guaranteed").  Further, there is no evidence that guests who booked accessible rooms did not receive the specific rooms that they reserved upon arrival at the Hotel.  The court is

---

[6] In Southwell's deposition, he states that a prospective customer can still select any room on the website, even if it is not available.  Southwell Dep., 30:20-23.  But before and after this statement, Southwell states that once a type of room is completely reserved, rooms of that type can only be *requested* and not reserved, and that customers attempting to reserve such rooms receive a notification that they are not available.  *Id.*, at 29:22-30:7, 33:10-21, 33:22-34:9.  Southwell confirms that rooms that are reserved are taken out of the system to prevent overbooking.  *Id.*, at 33:22-34:9.

1     thus persuaded that Marriott's website avoids double-booking and satisfies the block and remove

2     requirement.  The court declines to read the regulation in such a way as to prevent hotels from

3     creating waiting lists or allowing guests to make requests for accessible features.

4        Regarding Barnes's argument that the "Sold Out/Not Guaranteed" language pushes

5     prospective customers to call the Hotel, creating an additional burden for individuals with

6     disabilities who want to reserve an accessible room, the court is not persuaded that "Sold Out/Not

7     Guaranteed" is ambiguous.  Both phrases indicate that the room is not available.  Further, the

8     confirmation e-mails Barnes received show that she had made *requests*, not reservations, for the

9     accessible features that were listed as "Sold Out/Not Guaranteed."  The "Sold Out/Not

10    Guaranteed" notification and the confirmation e-mails make it clear that guests in Barnes's

11    position have not reserved rooms with the "Sold Out/Not Guaranteed" features and are not

12    guaranteed to receive such rooms upon their arrival at the Hotel.  The court is not persuaded that

13    this language creates an additional burden for individuals with disabilities.

14        **b.   Marriott's Telephone Reservation System.**

15        In addition to challenging Marriott's website, Barnes argues that the Hotel has violated 28

16    C.F.R. Section 36.302(e) in that the telephonic component of its reservation system failed to

17    identify or describe the accessible features of the Hotel's guest rooms.  Barnes called the Hotel

18    after making a reservation (for a standard room) to check on whether she would have an accessible

19    room.  Barnes Dep., 25:13-22.  The male staff member she spoke to—whom cannot be

20    identified—told her that either she would have an accessible room or her room would be made

21    accessible through the provision of a "temporary" or "portable roll-in shower" (which does not

22    exist).  *Id.*, at 32:21-33:10, 34:15-20.  Barnes argues that, since the telephonic reservation system

23    (i.e., the staff member who answered the phone) was not able to accurately describe the accessible

24    features of the Hotel's guest rooms, the Marriott's reservation system is not compliant with 28

25    C.F.R. Section 36.302(e).

26        Marriott responds that (1) the staff member's statements are hearsay, and cannot create an

27    issue of fact in a summary judgment motion, and (2) even if the statement is considered, there is

28    no ADA violation since the staff member "was not asked to identify or describe the accessible

1    rooms that could be reserved through the reservation system," but instead "described

2    accommodations that the Hotel could make to improve accessibility in a standard guest room."

3         This order addresses and rejects Marriott's hearsay objection above, finding it meritless.

4    Marriott's second argument offers a cramped reading of both the regulation and the facts asserted

5    by plaintiff.  The relevant provision of Section 36.302(e) requires hotel reservation systems to

6    "[i]dentify and describe accessible features in the hotels and guest rooms . . . in enough detail to

7    reasonably permit individuals with disabilities to assess independently whether a given hotel or

8    guest room meets his or her accessibility needs[.]"  Barnes asserts that the staff member she spoke

9    to offered her two assurances: (1) that she "would have an accessible room," or (2) that her room

10   could be made accessible through provision of a temporary roll-in shower.  Barnes Dep. at 32:21-

11   33:10; Barnes Decl. (I), ¶ 8.  Accepting, *arguendo*, Barnes's account of the phone call as true, the

12   staff member's first assurance was arguably an inaccurate identification of the accessible features

13   in the rooms available for Barnes to reserve, not merely (as defendant asserts) a description of

14   "accommodations that the Hotel could make."  The second assurance provided inaccurate

15   information about a temporary roll-in shower, which hampered Barnes's ability to determine

16   whether the room she had reserved met her accessibility needs.  The court is thus not persuaded by

17   Marriott's arguments related to whether the telephone call violated ADA regulations.

18         DOJ's ADA Guidelines offer some support to Barnes's theory that the telephone call

19   constituted a violation of Section 36.302(e).  The Guidelines state that, after reservations are made,

20   many individuals with disabilities "may wish to contact the hotel or reservations service for more

21   detailed information.  At that point, trained staff (including staff located on-site at the hotel and

22   staff located off-site at a reservations center) should be available to provide additional information

23   such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other

24   amenities available (*e.g.*, bathtub bench.)."  Not only does this guidance imply that the staff

25   member answering the telephone may be considered part of the hotel's reservation system, it also

26   implies that modifications (like bringing in a bathtub bench) are included in the scope of the

27   "identify and describe" regulation.  Compared to the information the Guidelines suggest a staff

28   member should be able to provide, the Marriott staff member's offer of a temporary roll-in shower

United States District Court
Northern District of California

1   falls far short.

2        Thus, if one accepts Barnes's account of the call as true, she might have established a

3   violation of the ADA regulations at 28 C.F.R. Section 36.302(e) related to her phone call.  The

4   court, however, declines to credit this claim, as this potential violation creates a new problem with

5   standing in addition to those discussed above.

6        As previously mentioned, to establish standing for injunctive relief, a plaintiff must

7   demonstrate a "real and immediate threat of future injury by the defendant."  *Sawczyn v. BMO*

8   *Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014) (quoting *City of Los Angeles*

9   *v. Lyons*, 461 U.S. 95, 101-02 (1983)).  Specifically, the plaintiff must demonstrate "'a sufficient

10  likelihood that he will be wronged again in a similar way.'"  *Chapman v. Pier 1 Imports (U.S.)*

11  *Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (quoting *Lyons*, 461 U.S. at 111).  In the ADA context,

12  deterrence from visiting a place with alleged ADA violations may be sufficient to establish

13  standing.  *Id.* at 947.

14       Here, Barnes has not shown how the alleged ADA violation related to the telephone

15  reservation system has deterred her from returning to the Marriott.  In her declaration in support of

16  her opposition to the defendant's summary judgment motion, Barnes states that she is deterred

17  from visiting the Hotel "until the reservation system is changed so that I can go on the website, see

18  what accessible rooms are available, see what access features are found in each such room, and . . .

19  know that I have such a room."  Barnes Decl. (II), ¶¶ 15.  The changes that would make the Hotel

20  acceptable to her do not include enhanced staff training or improvements to the telephone

21  reservation system.  She does not suggest that fixing these features is a prerequisite for her return.

22       Barnes also has not shown either that the Marriott's online reservation system violates the

23  ADA or that her injury is likely to be repeated.  Barnes is now familiar with the Marriott's online

24  reservation system and the meaning of its various notifications and communications.  It is highly

25  unlikely that she will have the same misunderstanding again.  Additionally, the court has not

26  found that the Marriott's website violates any ADA regulations.  Barnes is currently able to "go to

27  the website, see what accessible rooms are available, see what access features are found in each

28  such room, and[, if any such rooms are available,] . . . know that [she has] such a room."

*United States District Court*
*Northern District of California*

1     Finally, with respect to the phone call, Barnes has not produced any evidence that her call

2 was anything other than a one-time miscommunication.  She produced no evidence, for example,

3 of systemic problems in staff training.  In this respect, her injury is similar to the one alleged by a

4 plaintiff hotel guest in *Equal Rights Center v. Hilton Hotels Corp.* who reserved an accessible

5 room but did not receive it upon her arrival because the hotel was undergoing renovations.  No.

6 07-1528 (JR), 2009 WL 6067336, at *1 (D.D.C. Mar. 25, 2009).  In that case, the court held that

7 this plaintiff lacked standing because "even if she had [alleged a desire to stay at defendant's

8 Hotel], the possibility that her rights will be violated—that the . . . Hotel she stays in puts her in a

9 non-accessible room because of ongoing renovations—is too remote to constitute a 'real and

10 immediate' future violation of her rights."  *Id.*, at *3.  Similarly, in the present case, having been

11 misled once, Barnes is not likely to experience the same challenges in making a reservation at the

12 Marriott again.

13     Because she has not demonstrated "a sufficient likelihood that [s]he will be wronged again

14 in a similar way" or established that the alleged violation regarding the inadequate telephone

15 reservation system has deterred her from visiting the Marriott in the future, Barnes has not

16 established standing to pursue a claim related to this potential violation.

17 **5.  Supplemental Jurisdiction.**

18     The court, under 28 U.S.C. § 1367(c), may decline to exercise supplemental jurisdiction

19 under circumstances that include when "the district court has dismissed all claims over which it

20 ha[d] original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  As the court has dismissed the only federal

21 claim before it, which provided the only basis for its original jurisdiction, the court will exercise

22 its discretion to decline jurisdiction over the remaining state law claims.

23                                    **CONCLUSION**

24     Because Barnes does not establish standing to assert her federal claim, the court denies her

25 motion for summary judgment and grants summary judgment in favor of the defendant on that

26 claim, which is dismissed in its entirety.  The court declines to exercise supplemental jurisdiction

27 over the remaining state-law claims, which are dismissed under 28 U.S.C. § 1367(c)(3).

28     **IT IS SO ORDERED.**

United States District Court
Northern District of California

21

1    Dated: 2/16/2017

2

3                                                    _____
4                                                    HOWARD R. LLOYD
                                                     United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22